**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MELISSA LITTLE AND <br> JOHN LITTLE, JR. <br><br> Plaintiffs, <br><br> v. <br><br> COLOPLAST CORP.; COLOPLAST MANUFACTURING US, LLC; and MICHAEL H. HEIT, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case: 1:22-cv-888 <br> ) <br> ) <br> ) <br> ) <br> ) |

**NOTICE OF REMOVAL**

**I.   INTRODUCTION**

1. Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Coloplast Corp. and Coloplast Manufacturing US, LLC (collectively "Coloplast") hereby initiate removal of the action entitled Melissa Little and John Little v. Coloplast Corp.; Coloplast Manufacturing US, LLC; and Michael H. Heit, M.D., currently pending in the Marion Superior Court No. 1, Marion County, Indiana as Cause No. 49D01-1906-CT-23475, to the United States District Court for the Southern District of Indiana.

2. In this product-liability case, Plaintiffs Melissa and John Little (citizens of Indiana) have sued Coloplast, a foreign corporation, in Indiana state court, claiming that Mrs. Little was injured by a defective pelvic mesh implant designed and sold by Coloplast. While many similar cases are pending in federal courts around the United States, Plaintiffs have improperly attempted to block removal of this case by adding as a co-defendant Dr. Michael Heit, an Indiana doctor who implanted the device in Mrs. Little. But the record leaves no doubt that Plaintiffs have no viable

claim against Dr. Heit, and recently discovered evidence shows that Plaintiffs have strategically engaged in a bad faith effort to prevent removal of this case to federal court. More specifically:

- Plaintiffs never followed the procedure required for any substantial malpractice claim against a healthcare provider like Dr. Heit, which means that any such claim is now limited to no more than $15,000 in damages (compared to millions of dollars that Plaintiffs are seeking from Coloplast).

- Plaintiffs never sought any meaningful discovery with Dr. Heit.

- Plaintiffs did not disclose a single witness to testify about Dr. Heit's alleged malpractice.

- Plaintiffs did not disclose an expert witness to testify that Dr. Heit's actions were below the standard of care. As a result, Plaintiffs *cannot possibly prevail* against Dr. Heit under Indiana law.

- In a recent email, Plaintiffs stated their refusal to release Dr. Heit from this matter solely to avoid removal of this matter to federal court. Indeed, Plaintiffs rejected an offer to release Dr. Heit for the *maximum* amount they could possibly recover from him ($15,000) *unless Coloplast agrees not to remove the case to federal court*. This leaves no doubt that the sole reason for Dr. Heit's presence in this case is to prevent removal.

3.   Viewed collectively, these circumstances show that (1) Dr. Heit was fraudulently joined and should be ignored for purposes of this Court's jurisdictional analysis and (2) Plaintiffs have acted in bad faith to prevent removal within one year of the filing of the complaint. In 2011, Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act to prevent precisely the type of chicanery that is occurring in this case. This new provision specifically authorizes

removal of cases based upon diversity jurisdiction more than one year after commencement in state court where, as here, "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

## II.   FACTUAL BACKGROUND

4.   Plaintiffs commenced this civil action in the Superior Court No. 1 of Marion County, Indiana, Civil Action No. 49D01-1906-CT-23475 on or about June 11, 2019. Plaintiffs filed their First Amended Complaint on or about June 17, 2019. Ex. B, Am. Compl.

5.   In the state court action, Plaintiffs assert claims under the Indiana Product Liability Act ("IPLA") arising out of Plaintiff's pelvic floor reconstructive surgery, which was augmented with a Restorelle XL surgical mesh implant ("Restorelle"), a prescription-only surgical mesh implant cleared for sale by FDA for the surgical treatment of pelvic organ prolapse ("POP"). *Id.* at ¶¶ 8-9.[1]

6.   In Plaintiffs' First Amended Complaint, Plaintiffs allege design defect and failure to warn causes of action against Coloplast, as well as loss of consortium and personal injury claims brought by Plaintiff John M. Little, Jr. *See id.* at Count I, II, V, & VI.

7.   Plaintiffs filed a single cause of action of malpractice against Defendant Dr. Michael Heit, the surgeon who performed the surgical procedure to implant Restorelle mesh to treat Plaintiff's POP. *Id.* at Count VII. Without detail or explanation, Plaintiffs explicitly only sought damages "not greater than fifteen thousand dollars ($15,000) from Defendant Heit." *Id.* at ¶ 114. Plaintiffs have never undertaken a good faith or detailed pursuit of any legal claim against

---

[1] Plaintiffs' also brought claims against Boston Scientific Corporation, the manufacturer of the pelvic mesh sling to treat her stress urinary incontinence that Mrs. Little received during the same surgery. Plaintiffs voluntarily dismissed Boston Scientific Corporation in December 2020.

Dr. Heit, for the treatment he provided as the implanting surgeon, instead naming him as a defendant solely for the purpose of defeating diversity jurisdiction at this Court.

8. Under Indiana law, if a plaintiff is suing a healthcare provider for negligence and asserting so much as a dollar more than Fifteen Thousand Dollars in likely damages, she must submit a Proposed Complaint to a Medical Malpractice Review Panel for its determination before the case can invoke the jurisdiction of a court to proceed to trial. *See* Ind. Code § 34-18-8-4. This is strictly the ordinary course medical malpractice actions take in Indiana given the low dollars involved if not followed, especially by experienced attorneys. Rather than follow the ordinary process, Plaintiffs specifically plead the bare minimum to avoid the Panel Process.

9. The purpose of Plaintiffs' decision to not seek full and complete relief from Dr. Heit is now revealed as consistent with the recently discovered evidence that Dr. Heit was named as a defendant solely to prevent Coloplast from removing this case to federal court.

10. Here, Plaintiffs did not bring their medical malpractice case before a panel for review, and thus, they are limited to no more than $15,000 in damages from Dr. Heit, even though they are seeking millions in damages from Coloplast, deriving from his recommendation for and implantation of Coloplast's medical product.

11. Plaintiffs have instead proceeded to litigate the case in state court and thus Coloplast has been actively preparing for trial, which is presently scheduled for June 13, 2022.

12. In furtherance of Plaintiffs' previously undisclosed intent, which was recently discovered, Plaintiffs never filed a designation of any expert witness to offer testimony that Dr. Heit's treatment of the Plaintiff fell below the standard of care for a surgeon preparing such procedures—testimony that is plainly necessary for any viable claim against Dr. Heit. Yet, under Indiana law, a "medical malpractice plaintiff is ordinarily required to present expert opinion that a

defendant health care provider's conduct fell below the applicable standard of care." *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1132 (Ind. Ct. App. 2019).

13. On April 26, 2022, the parties attended a hearing to discuss the upcoming trial date. At that hearing, Plaintiffs' counsel represented for the first time that he did not expect that Dr. Heit would still be in the case at the time of trial and that Plaintiffs' counsel was "in discussions" with Dr. Heit's counsel regarding the removal of Dr. Heit as a party. In turn, Dr. Heit's counsel informed the parties that Dr. Heit was moving out of state and that he would not likely be present for the trial.

14. The following day, on April 27, 2022, Dr. Heit's counsel forwarded counsel for Coloplast an email from Plaintiffs' counsel reiterating the conversation discussed above, making clear to Coloplast's counsel that Plaintiffs' purpose in keeping Dr. Heit in the case was to avoid federal jurisdiction.

15. This evidence directly established for the first time that Plaintiffs' retention of Dr. Heit as a defendant in the case was to defeat diversity jurisdiction, and that Plaintiffs would not proceed to conclude any efforts to dismiss Dr. Heit from the case in the absence of an express agreement that Coloplast would agree to waive its options to remove the claim. It is for good reason that Plaintiffs' counsel could well anticipate that Coloplast would act to remove the case as the diversity of the principal parties would have otherwise permitted at the outset.

16. More specifically, the email states, "One obstacle to my clients accepting your proposal to reimburse $15,000.00 of case costs, if I understand your proposal, is that Plaintiffs cannot take the chance that Coloplast will file a notice of removal to federal court." *See* Ex. C, April 27th Email Correspondence. The email further states, "If you would like, please see if your

fellow defense counsel for Coloplast will stipulate they will not file a notice of removal.  I don't see going forward with accepting your proposal unless we have such a stipulation." *Id*.

### III. NOTICE OF REMOVAL IS TIMELY UNDER THE BAD FAITH EXCEPTION

17. In 2011, the Federal Courts Jurisdiction and Venue Clarification Act established an exception to the bar on removal of cases based upon diversity jurisdiction more than one year after commencement in state court if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

18. The bad faith exception to removal after one year of commencement, "focuses not on the validity of the plaintiff's claim against a non-diverse party at the time the action was filed," but on whether "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  *Massey v. 21st Century Centennial Ins. Co.*, 2017 WL 3261419, at *3 (S.D.W. Va. July 31, 2017); 28 U.S.C. § 1446(c)(1).

19. Although the Seventh Circuit has not directly addressed what constitutes bad faith, many district courts in the Seventh Circuit have cited to *Aguayo v. AMCO Ins. Co.*, 59 F. Supp.3d 1225 (D.N.M. 2014), which established a two-part test to analyzing bad faith.  *See Henning v. Barranco*, 2021 WL 5578767, at *3 (N.D. Ill. Nov. 30, 2021); *see also Herron v. Graco, Inc.*, 2016 WL 7239915, at *4 (S.D. Ill. Dec. 15, 2016) (citing *Aguayo* to hold that bad faith under § 1446(c)(1) requires a causal link showing that plaintiff has acted in bad faith in order to prevent a defendant from removing an action).

20. Under *Aguayo,* the Court would first examine "whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint,

6

et cetera." *Id*. at 1262. "Failure to actively litigate against the removal spoiler will be deemed bad faith." *Id*.

21.     If, by contrast, the court finds that the plaintiff actively litigated against the removal spoiler, then a rebuttable presumption of good faith arises. *Id*. But the defendant may still rebut this presumption with evidence "that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court." *Id*. at 1262-63. To that end, "[t]he defendant may introduce direct evidence of the plaintiff's bad faith at this stage--e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal." *Id*. at 1263.

22.     Here, removal is proper under either of the two options outlined in *Aguayo*. As explained in section A below, Plaintiffs did not actively litigate against Dr. Heit. Indeed, Plaintiffs never even named a witness—let alone a qualified expert—to present the type of testimony that is necessary to prevail in a medical malpractice action. And as explained in section B, Plaintiffs' electronic mail transmission presents direct evidence of bad faith, as it shows that Plaintiffs' sole purpose for keeping Dr. Heit in this case is and has been to prevent removal to federal court. So even assuming that Plaintiffs had actively litigated against Dr. Heit, the case would still be removable under the bad faith exception.

   **A.     Plaintiffs Have Not Actively Litigated Against Dr. Heit**

23.     During the nearly three years since the commencement of this action, Plaintiffs have vigorously litigated their claims against Coloplast. But Plaintiffs have done little to litigate their claims against the non-diverse Defendant Dr. Heit.

24. In evaluating whether a plaintiff has actively litigated a case against a non-diverse defendant, courts look to "(i) the amount of time the [non-diverse defendant] spent joined to the case, [and] (ii) the size and money value of the case." *Aguayo*, 59 F. Supp. 3d at 1275.

25. Here, Plaintiffs have wholly failed to prosecute their claims against the non-diverse Defendant Dr. Heit. For example, Plaintiffs served Coloplast with a total of 57 requests for production, while Plaintiffs issued only 10 generic requests for production to Dr. Heit during the course of discovery, and the substantive information sought was either obtainable from Coloplast or through third party deposition discovery.

26. Moreover, Plaintiffs' expert reports were focused solely on placing the blame on Coloplast for Plaintiffs' injuries. Plaintiffs served no expert reports accusing Dr. Heit of any malpractice. In fact, Plaintiffs' own causation experts, Jerry G. Blaivas, M.D. and Michael Margolis, M.D., both testified at their depositions that Dr. Heit performed within the standard of care. *See* Margolis' Deposition at 354:11-25 – 355:1-25 ("Q. You would agree that Dr. Heit implanting Restorelle was within the standard of care. Page 61 on your disclosure. A. Yes."); *see also* Blaivas' Deposition at 420:8-13 ("Q. Doctor, my name is Mary Feldhake, and I represent Dr. Heit in this matter. Am I correct in making the statement that you are not going to testify that Dr. Heit breached the standard of care? A. That's correct.").

27. Furthermore, in preparation for trial, Plaintiffs have designated no expert or fact witness to support any claim against Dr. Heit. Indiana law is clear that a party cannot prevail on a claim of medical malpractice without an expert, and failure to provide expert testimony will usually subject the plaintiff's claim to summary disposition. *Bhatia v. Kollipara*, 916 N.E.2d 242, 246 (Ind. Ct. App. 2009); *see also Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) (holding that "based on the Patients' failure to introduce expert medical testimony on the issue of

causation, we conclude that the trial court's decision to deny Singh's motion for judgment on the evidence regarding the Patients' medical malpractice and gross negligence claims was clearly erroneous.").

28. Plaintiffs have also been passive rather than active in this litigation in other ways; for example, under Indiana law, as a threshold matter, a party has to submit its claim for expert review by a Medical Malpractice Review Panel before being able to proceed in court unless they concede that the claim is *limited* to $15,000.  Plaintiffs did not go before the panel, as is ordinarily done, to pursue their right to full and complete recovery of their damages for their possible claim against Dr. Heit, and as a result, Plaintiffs are limited to recovering only the *de minimis* amount of $15,000, assuming they will get beyond a motion for judgment on the evidence due to the lack of evidence and expert testimony.

29. With these facts in mind, Plaintiffs have failed to actively litigate their claim against Dr. Heit.  This alone warrants a finding of bad faith.  *See, e.g., Aguayo*, 59 F. Supp.3d at 1262; *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 779 (N.D. Ohio 2019) (holding there was a lack of active litigation by plaintiff against the non-diverse defendant and thus, plaintiff's motion to remand was denied).

**B.     Plaintiffs Have Engaged in Bad Faith Conduct To Prevent Removal**

30. Even assuming arguendo that Plaintiffs had actively litigated against Dr. Heit, a finding of bad faith would still be proper in light of evidence showing that Plaintiffs would not have named the non-diverse defendant or would have dropped the non-diverse defendant before the one-year mark but for Plaintiffs' desire to keep the case in state court. *Aguayo*, 59 F. Supp. 3d at 1275.

31. More specifically, the direct evidence of bad faith comes in the form of an electronic mail transmission sent by Plaintiffs' attorney on April 27, 2022. As noted above, this email states that Plaintiffs will not accept Dr. Heit's $15,000 proposal (which is the maximum Plaintiff could recover from Dr. Heit) because "Plaintiffs cannot take the chance that Coloplast will file a removal to federal court." *See* Ex. C, April 27th Email Correspondence. Plaintiffs then explained that they would accept Dr. Heit's proposal if Coloplast stipulates not to remove this case to federal court. *Id*. In other words, Plaintiffs rejected a settlement offer for the highest possible recovery against Dr. Heit solely because Dr. Heit's presence is needed to prevent removal. No other reason for rejecting the maximum offer is stated in the email. Indeed, Plaintiffs left no doubt about their motivation by conditioning the release of Dr. Heit on Coloplast agreeing not to remove the case to federal court—which constitutes plain evidence that Dr. Heit is in the case only to defeat removal.

32. Federal courts have found bad faith where, as here, the plaintiff declined settlement with a non-diverse defendant for the purpose of defeating diversity. *See, e.g. Hiser v. Seay*, 2014 WL 6885433 (W.D. Ky. Dec. 5, 2014) (holding that bad faith existed after finding that both local defendants offered to settle for policy limits within the first two months of litigation, but plaintiff declined the offer until safely past the one-year mark).

33. Other courts have also found bad faith where, again as here, the plaintiff indicates that a settlement with the removal spoiler would be conditioned on an agreement not to remove the case. The court in *Massey v. 21st Century Centennial Ins. Co.*, for example, held that a defendant created a strong inference of forum manipulation when it introduced evidence that plaintiff's counsel inquired with defendant's counsel whether the corporate defendant was going to attempt to remove the case if the plaintiff accepted a settlement term. 2017 WL 3261419, at *7

10

(S.D.W. Va. July 31, 2017). The court found evidence of bad faith, holding that "counsel's inquiry regarding removal creates a strong inference that the settlement offer was allowed to remain outstanding for one purpose—to prevent removal to federal court. When viewed in tandem with the lack of litigation against the non-diverse defendant, the Court takes counsel's inquiry as proof that [defendant] would not have been in the case at the one-year mark but for [Plaintiff's] deliberate forum manipulation." *Id*. (internal citations omitted).

34. *Mullins v. Rish Equip. Co.* is another example. There, the court was persuaded to find that plaintiffs acted with the intent to spoil removal after plaintiff's counsel informed defendant of his intent to dismiss a non-diverse defendant. 2021 WL 4448296, at *5 (S.D.W. Va. Sept. 28, 2021). Before the order was signed, plaintiff's counsel called defendant's counsel and told him he would not be dismissing the case because it had not yet been one year since the filing of the compliant and dismissal would leave him vulnerable to removal. *Id*. Plaintiff's counsel then asked defendant's counsel if he would agree not to remove the case in exchange for the voluntary dismissal of the non-diverse defendant, and defendant's counsel declined via email. *Id*. The court held that because plaintiff clearly stated he had no real interest in pursing his claim against the non-diverse defendant and was willing to dismiss him in exchange for no real concessions from the other side, this was sufficient evidence to establish bad faith. *Id*. at *5.

35. The same is true here.

36. The statements made by Plaintiffs' counsel in his April 27th email are similar to those in *Massey* and *Mullins*. They make clear that Plaintiffs rejected a maximum offer from Dr. Heit only to defeat removal and that Plaintiffs conditioned the release of Dr. Heit on Coloplast's agreement not to remove. This is direct evidence of forum manipulation and rebuts any presumption of good faith that Plaintiffs may have attempted to create by serving discovery on Dr.

11

Heit to obtain information they could have received from Coloplast.  The Court should not permit such tactics.

37. Coloplast notes that other statements in Plaintiffs' counsel's email suggesting an alternative motive by Coloplast for the removal is unfounded and improper, and should not be a basis to deny Coloplast's ability to defend this action in the appropriate jurisdictional forum.  In the April 27th email, Plaintiffs' counsel alleges that Coloplast will try to remove the case "to get out of the June trial date" and that is why Plaintiffs cannot take the chance on removal.  To be clear, the basis for this Notice of Removal is not to in any way avoid a June trial date.  Coloplast remains prepared to proceed with trial on June 13. Rather, Coloplast has removed this case because, notwithstanding Plaintiffs' bad faith tactics, this case is within the jurisdiction of the United States District Court for the Southern District of Indiana.  Also, Coloplast submits its Notice of Removal promptly after first discovery of grounds to do so.  Plaintiffs controlled the timing of making an inevitable proposal to dismiss Dr. Heit right before trial; Coloplast did not.  Plaintiffs cannot use their purposeful timing as a shield and sword.

## IV.   DIVERSITY OF CITIZENSHIP EXISTS

38. Plaintiffs Melissa Little and John Little are citizens and residents of the City of Delphi, County of Carroll, State of Indiana.  *See* Ex. B, Am. Compl. at ¶ 1.

39. A corporation like Coloplast Corp. is a citizen of its state of incorporation and of the state in which it has its principal place of business.  *See* 28 U.S.C. §1332(c)(1).

40. Coloplast Corp. is incorporated under Delaware law and its principal place of business is in Minneapolis, Minnesota.  Therefore, now and at the time this action was commenced, Coloplast Corp. is a citizen of Delaware and Minnesota.

41. Coloplast Manufacturing US, LLC is a limited liability company. For purposes of diversity jurisdiction, the citizenship of a limited liability company is that of its members. *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245 (7th Cir. 2003). Coloplast Manufacturing US, LLC is a wholly-owned subsidiary of Coloplast Corp, and Coloplast Corp. is the sole member of Coloplast Manufacturing, US, LLC. Coloplast Corp. is a citizen of the States of Delaware and Minnesota because it is a corporation incorporated under Delaware law and has its principal place of business in Minneapolis, Minnesota. Accordingly, for purposes of determining its citizenship, Coloplast Manufacturing US, LLC is a citizen of Delaware and Minnesota.

42. Defendant Dr. Michael Heit is licensed to practice medicine in the State of Indiana with his practice of medicine located in Indiana. *See* Ex. B, Am. Compl. at ¶ 6. However, as discussed above, because Plaintiffs refused to dismiss or settle the case with Dr. Heit in a bad faith attempt to avoid removal, Dr. Heit's citizenship is disregarded for purposes of determining whether diversity of citizenship is satisfied.

43. More specifically, the fraudulent joinder doctrine allows a court to disregard the citizenship of any fraudulently joined defendant when determining whether complete diversity exists. *St. v. Cottrell, Inc.*, 2010 WL 750027, at *3 (S.D. Ill. Mar. 3, 2010) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). The court can then assume jurisdiction over the removed case, dismiss any non-diverse fraudulently joined defendant from the suit and retain jurisdiction over the case. *Id*.

44. Here, Plaintiffs did not disclose an expert witness to testify that Dr. Heit's actions were below the standard of care. As noted above, a plaintiff cannot prevail on a claim of medical

malpractice without an expert. *See Bhatia*, 916 N.E.2d at 246; *see also Singh*, 889 N.E.2d at 360. Thus, Plaintiffs cannot possibly prevail against Dr. Heit under Indiana law.

45. If there is no possibility for Plaintiffs to recover against Dr. Heit, the Court can disregard the citizenship of Dr. Heit when determining complete diversity exists. *See St.*, 2010 WL 750027, at *3. Because none of the properly joined Defendants are citizens of the same state as Plaintiffs, complete diversity exists under 28 U.S.C. § 1332(a).

## V. AMOUNT IN CONTROVERSY EXCEEDS $75,000

46. Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth in 28 U.S.C. 1332(a).

47. Here, the amount-in-controversy requirement is satisfied because it is apparent from the facts of this case that Plaintiffs have placed an amount in excess of $75,000, exclusive of interest and costs, at issue.

48. The lack of specificity in Plaintiffs' Complaint is compelled by Trial Rule 8(A)(2), Indiana Rules of Trial Procedure, which prohibits plaintiffs from alleging a specific dollar amount in their complaints.

49. A defendant can meet its burden of demonstrating the amount in controversy through contention interrogatories or admissions in state court; by calculations from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits. *Tedesco v. State Farm Fire & Cas. Co.*, 2022 WL 1210726, at *3 (N.D. Ind. Apr. 22, 2022) (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)).

50. The proponent of federal jurisdiction need only demonstrate "a plausible and good faith estimate of an amount in controversy" that exceeds $75,000; the defendant's plausible and good faith estimate will be defeated only "if it is a 'legal certainty' that the plaintiff's claim is for less than the requisite amount." *Id*. (citing *Webb v. Fin. Regulatory Auth., Inc.*, 889 F.3d 853, 859 (7th Cir. 2018)).

51. In all, Plaintiff is seeking compensatory damages, including actual damages, past and future costs of treatment, past and future physical pain and suffering, mental and emotional anguish, ability to function as a whole person, aggravation of preexisting injury or condition, disfigurement, loss of earnings and future earning capacity, injunctive relief, costs and expenses of this litigation, reasonable attorneys' fees and costs, Plaintiff John M. Little's loss of consortium, and punitive damages. *See* Ex. B, Am. Compl. at ¶¶ 77-101. Plaintiff's counsel has demanded amounts from Coloplast significantly in excess of $75,000 to resolve the case.

52. Based on the types of compensatory damages sought by Plaintiffs, as well as Plaintiffs' prior settlement demands, it is clear that the amount-in-controversy requirement is satisfied.

## VI. COLOPLAST HAS COMPLIED WITH ALL REMOVAL PROCEDURES

53. The Marion Superior Court No. 1, Marion County, Indiana, is located within the Southern District of Indiana, Indianapolis Division. *See* 28 U.S.C. § 94(b)(1). Venue for this action is proper in this Court because the Southern District of Indiana is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

54. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon and by Defendants are attached to this Notice of Removal. A copy of the Marion Superior Court No. 1 docket sheet is attached as Exhibit A-1. A complete copy of the Marion Superior

Court No. 1 file is attached as Exhibit A-2 to A-261. A copy of the First Amended Complaint is attached as Exhibit B. A copy of the August 27, 2022 email referenced above is attached as Exhibit C.

57. Defendants will promptly file a copy of this Notice with the Clerk of Marion County, Indiana, as required by 28 U.S.C. § 1446(d).

56. Immediately following the filing of this Notice of Removal, notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d).

57. This Notice of Removal is filed on behalf of all properly joined defendants. Dr. Heit need not consent to removal because he is fraudulently joined. *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015) ("A fraudulently joined defendant need not consent to removal."); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (holding that consent for removal is not required from an improperly-joined defendant); 28 U.S.C. § 1446(b)(2)(A) (requiring only properly joined defendants to join or consent to removal).

58. In filing this Notice of Removal, Coloplast reserves any and all defenses, objections, and exceptions, including but not limited to those relating to service, venue, and the statute of limitations.

Date: May 5, 2022	Respectfully submitted,

*Kristopher N. Kazmierczak*
Sally Franklin Zweig, No. 11367-49
Kristopher N. Kazmierczak, No. 19430-49
KATZ KORIN CUNNINGHAM, PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Office: (317) 464-1100; Fax: (317) 464-1111
szweig@kkclegal.com
kkaz@kkclegal.com

Robert K. Woo(*Pro Hac Vice to be filed*)
Aaron Parks (*Pro Hac Vice to be filed*)
Val Leppert (*Pro Hac Vice to be filed*)
Philip R. Green (*Pro Hac Vice to be filed*)
KING & SPALDING LLP
1180 Peachtree St. NE, Suite 1600
Atlanta, Georgia 30309
Office: 404-572-4940; Fax: 404-572-5100
bwoo@kslaw.com
aparks@kslaw.com
vleppert@kslaw.com
pgreen@kslaw.com

Lisa H. Shub (*Pro Hac Vice to be filed*)
Melvin D. Bailey (*Pro Hac Vice to be filed*)
Zachary C. Burnett (*Pro Hac Vice to be filed*)
KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, Texas 78701
Office: 512-457-2013; Fax: 512-457-2100
lshub@kslaw.com
mbailey@kslaw.com
zburnett@kslaw.com

William E. Steimle (*Pro Hac Vice to be filed*)
KING & SPALDING LLP
50 California St.; Suite 3300
San Francisco, CA  94111
Office:  415-318-1200
wsteimle@kslaw.com

*Counsel for Defendants, Coloplast Corp. and Coloplast Manufacturing US, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **May 5, 2022**, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's ECF. Parties may access this filing through the Court's system.

I further certify that a copy of the foregoing was sent via e-mail to the following:

| | |
|---|---|
| Richard A. Cook<br>YOSHA COOK & TISCH<br>*Plaintiffs* | rcook@yoshalaw.com |
| Thomas O. Plouff<br>COSTELLO, MCMAHON, GILBRETH & MURPHY, LTD.<br>*Plaintiffs* | tplouff@costellaw.com |
| Lisa Causey-Street [PHV]<br>SALIM-BEASLEY<br>*Plaintiffs* | lcausey@salim-beasley.com |
| Evan T. Ostrega [PHV]<br>*Plaintiffs* | e.ostrega@outlook.com |
| Mary M. Ruth Feldhake<br>BOSE MCKINNEY & EVANS LLP<br>*Michael H. Heit, M.D.* | mfeldhake@boselaw.com |

*Kristopher N. Kazmierczak*
Kristopher N. Kazmierczak

KATZ KORIN CUNNINGHAM, PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Office: (317) 464-1100; Fax: (317) 464-1111